May it please the court, my name is Gary Finn and I represent the petitioner Juana Mosqueda-Araujo and as the court knows, in order for the Border Patrol to stop a person in the United States there must be a reasonable suspicion of alienage based on articulable facts and in this case, the Border Patrol agent that stopped my client on the street in Palm Springs stated himself in the removal hearing that he did not have any reasonable suspicion of alienage. Why did the agent stop your client? He stopped my client because he was asked to do so basically by the Palm Springs Police Department. And why did the Palm Springs Police Department ask for the stop? Well, it's unclear. There was an allegation that my client had made a false report to the police. About what? We don't know. In fact, at the hearing, the immigration judge himself asked Agent Arredondo what was the false complaint about and he said, I have no idea. They told me that she made a false complaint so I put it down in the form I-213 and the immigration judge was quite upset because this is something that's going to be in my client's permanent immigration record and there's no basis about what this false complaint was about. In fact, I don't think that there was any false complaint to the police. But what happened was, my client was at the police station. At the time that Agent Arredondo arrived there in response to a call from the Palm Springs Police, she was walking away. So Agent Arredondo walked up to my client and asked for her citizenship status and my client responded. But at that point, I don't believe that she felt that she was free to walk away or to keep walking. I feel that at that point she was seized and the Fourth Amendment was violated. Assuming for purposes of my question that she was seized, which is an issue, is to say was she or was she not sort of free to walk away, and assume further for the purposes of my question that she was seized without reasonable suspicion of alienage, then what or so what? What happens? I mean, how do you get where you want to get given that? Well, first of all, I mean, Agent Arredondo himself admitted there was no reasonable suspicion. For the purpose of the question, I'm assuming all that. What I want to know is where does that get you? Well, the Agent Arredondo's testimony and the Form I-213 should be suppressed. That's what should have happened at the removal hearing. And what's the standard for suppression? There has to be an egregious violation. Yeah, so it's not just done without reasonable suspicion. It has to be egregious. Well, and I think it is because, you know, here's an agent that has 10 years of training, and this Court has stated before that Border Patrol agents are supposed to have training in the Fourth Amendment. And he was stopping my client without, by his own admission, with no reasonable suspicion of alienage. He did it only because somebody else asked him. Another law enforcement agency. That doesn't sound egregious. I mean, it has to be egregious. Well. A law enforcement agency says you better stop this person. We think that a crime may have been committed. Well, and I agree that that's significant, but I don't think it absolves Agent Arredondo of doing his job, which would have been to ask Sandy, who was the employee of the Palm Springs Police Department, do you suspect that person is an alien, an illegal alien? Why? And to make his own judgment. Let me ask you this. Your client didn't take the stand in front of the I.J. because the I.J. informed her that she would not be able to take the Fifth Amendment, assuming that that was incorrect, that she could well have ‑‑ she could have taken the Fifth Amendment, and that she was therefore improperly kept off the stand. What would she have testified to, if anything, that would have changed the story that we already have heard from Agent Arredondo? Or is the factual picture painted by Agent Arredondo, or are we to assume that that's roughly what happened? What my client would have said was that, based on the circumstances, at the moment she was confronted by Agent Arredondo, she felt that she was in custody and could not leave. And I guess that's probably it. So there would have been nothing else that would contradict what he said in terms of the nature of the questions and so on? No, Your Honor. Okay. So if we're judging egregiousness, we basically judge it based on the story that he told, because your client, if she had taken the stand, would not have told a different story? That's right, Your Honor. Okay. The other thing I'd like to raise is the fact that when my client got back to the Border Patrol Station and she was interviewed, Agent Arredondo did not follow regulations requiring him to have the interview done by another officer. Clearly there was testimony there were other officers available at the station, and Agent Arredondo decided to do the interrogation himself without having another officer do it. And the regulation is 287.3, and it's there to protect persons in my client's situation, so you get a more objective person to do the interrogation. What flows from the violation? Well, I believe that, again, there's another reason that the I-213 should have been suppressed, by the judge, by the immigration judge. Do you have any case law, authority, statutes, rules, or regulations that say that's the remedy? I think I did cite one in the brief. That's a case called Navia, Duran. It's not from the circuit, but in that circuit, that's cited in my brief, and in that case, it's a First Circuit case, and I-213 was suppressed under similar circumstances. Another thing I'd like to mention is I guess the court probably received, I got a 28J letter from the government on Monday with some additional citations, and one was a Supreme Court case, Mueller v. Maina, where the Supreme Court held that some police officers were entitled to ask a woman who was in custody, handcuffed in custody during a search that was carried out pursuant to a warrant for her citizenship status, and the Supreme Court in that case held that that was not an egregious violation of the Fourth Amendment. I think that case is distinguishable because this is a person who was already in custody, had already been seized, and was in custody of the police. The other two cases that the government had cited in the 28J letter was U.S. v. Garcia Beltran and U.S. v. Del Toro Medino. In these cases, this court, the Ninth Circuit, held that it was not a seizure under the Fourth Amendment to get a person's identity. This, that is also distinguishable from the case, from my client's case, because not only, they were after, the Border Patrol was after alienage, which is a separate question from identity altogether. Yeah. I'm very confused. Same question that Judge Gletcher asked I have written on my notes. So suppose it's all true. Where is this going? Okay. So you want everything canceled and then she's released in the United States, but now everybody knows she's illegal. So can they just seize her again? I mean, now that they all know what the story is. I'm quite confused as to where we're going with this case. Well, they could seize her again, I suppose, and issue a new notice to appear. It would be very different, though, because at this point, my client would be eligible for relief. She's been in this country for 10 years and would be eligible for cancellation of removal. She's not eligible for 10 years if this proceeding goes forward. Correct. And if this one goes away, she's made her 10 years. Correct. And she does have three U.S. citizen children born in the United States. All right. I was just wondering where we're going with all this. Now I've got an idea of where you're going. Okay. Well, I'll reserve the balance of my time for rebuttal. Okay. I'll let the government give you their side of the story. Thank you. Thank you. Good morning, Your Honor. I'm John McAdams on behalf of the Attorney General. And may it please the Court, whether Officer Orodondo's approach and brief questioning was an egregious violation of the Fourth Amendment is a question that this Court reviews de novo. And whether the Board abused its discretion in properly denying the suppression motion and whether the immigration judge abused his discretion in refusing to provide a separate suppression hearing are the second and third issues before the Court. This case, Border Patrol Officer Orodondo testified that he conducted a brief stop on a public street in the middle of the morning in Palm Springs and asked Ms. Mosqueda Aruojo her citizenship status. She said she was not a U.S. citizen. She had no papers. And based upon that, he then took her into custody and processed her as being an alien who was without status in the United States. It was not an egregious issue. There was no seizure when he first went up to her, and it was only after he had the information about her status that he did conduct the apprehension. Would it be an egregious violation if a Border Patrol agent walked up to someone with absolutely no suspicion of alienage and asked that person the questions that Agent Orodondo asked in this case? No, Your Honor. Why not? The Supreme Court has held in Florida v. Bostick and the second case cited in the Mueller decision, INS Delgado, where the mere questioning of a police officer does not constitute a seizure. No, I'm asking a different question. I understand it's a disputable issue, a disputed issue as to whether or not there was a seizure, and I should have been clear. Assume for purposes of my question that this was a seizure, and I recognize that's a disputed point. Would it be an egregious violation for an officer, for a Border Patrol officer to stop someone, and under conditions where that person did not feel free to leave, ask that person, are you an alien, when the agent, when the officer has absolutely no suspicion of alienage? Is that egregious? Again, I would submit that it's not, Your Honor. Going through the circumstances in Mueller where, in that case, the individuals had been handcuffed because the officers, police, were conducting a search of the residence, and they had been told that there were weapons there, so the potential was that the persons were armed. And the immigration officer asked about immigration status, and it was found not to be an egregious violation. But there are other cases, and it's not in the seizure context, but the stop-and-ask, where stopping and asking is not egregious, and it can be done because it's not a seizure. The court has looked at the Orohage, O-R-H-O-H-A-G-E. You don't have to spell it. Okay. Thank you, Your Honor. In discussing egregious conduct, and in that situation, the court looked at the facts where the alien had been tricked out into the passageway by a bank inspector. No, this is clearly not that case. I understand that. And it's not. So trying to discuss the egregious element and put it into some finite terms, we would suggest that those cases that the court has cited in the past would lead to the conclusion that this was not an egregious situation. Let's move to the violation of the regulation 287.3. That regulation requires him to pass the interrogation of Ms. Mosqueda over to another agent. Is that right? Yes, Your Honor. And that was violated. Yes, Your Honor. The other side says that Navia Duran versus the INS says that compliance with the regulation, you don't know which one it is, is an essential safeguard of the alien's right to due process. Do you know what Navia Duran says? I saw it in the brief time, but I looked at it. And when looking at the regulation, I was looking at Seventh Circuit, the Martinez-Camarongo decision, where the Internal Revenue Service. You've got the Garcia-Flores analysis. We haven't adopted yet in this circuit, I guess. Correct, Your Honor. At the bottom of page 10 of his brief, he says, even so, Ms. Mosqueda can show that she was prejudiced by the failure to file 287.3. Had it been followed, Ms. Mosqueda would have been advised that any statement she gave would be used against her in a subsequent administrative proceeding. She was clearly prejudiced because that didn't happen, and the only evidence of alienage were her own statements. Your response to that is? Your Honor, there was no prejudice. The information about her alienage was already known, and the Border Patrol officer, Orodondo, had that information when he stopped her and asked her if she was a U.S. citizen. And the regulation is one that it's a guidance for law enforcement. It says that the officer should pass, and the testimony from Officer Orodondo was that there was another officer in the office, but he wasn't sure what that officer was doing or what other cases that officer may have been involved in. And Officer Orodondo, in his testimony before the court was asked about it, and it wasn't a blatant disregard of the regulation. Officer Orodondo explained that the other person there was also involved. Does 287.3 require an advice that any statement that you give will be used against you in a subsequent administrative proceeding? It doesn't say that I remember in the regulation, Your Honor. It says that the officer should have another officer conduct the interview. And this regulation doesn't provide a substantive or procedural right to Ms. Mosqueda. It says that the officer should have another one conduct the interview. And as the matter of Garcia-Flores says out in its decision, that the regulation must serve or benefit the alien, and then if there is some unlawfulness, then it has to prejudice the alien. And in looking at the Martinez-Camarongo decision, the Seventh Circuit case, this is the one where the oil change was occurring in the vacant lot. The alien there admitted alienage, and the court said that the issue that the court had to look at is if another officer had examined the person in that case, whether the INS would not have discovered that alien's illegal status. In this case, Ms. Mosqueda had already pulled Officer Orodondo. Mr. Finn says, without the Form I-213, the government could not have proven alienage and removal proceedings would have been terminated. Based upon what we see in this record, I would have to disagree. Border Patrol Officer Orodondo testified. His testimony established that Ms. Orodondo was not a U.S. citizen and not a person who had proper status in the United States. So if you strike the Form I-213, you're telling us it would have made no difference? That's correct. Border Patrol Officer Orodondo, as the record shows, testified in his presence. So the alienage had been established, and it had been established back in Palm Springs on the street when Border Patrol Officer Orodondo asked the question. Why, and I confess to a little bit of ignorance, and I'm taking some of this on faith, but as I understand it, the officer, if the regulation is followed properly, and the separate officer interviews in order to get the information from the I-213, that officer will say any information you give here and that I put on the form can be used against you in an administrative proceeding. On the form, your Honor. Why is that warning given? In most administrative proceedings, the Border Patrol Officer Orodondo isn't present. And what the rationale when the form was prepared, created, I can't answer that question to the Court. But I take it the implication of your answer when you said even if you keep out the I-213 form, Agent Orodondo is going to testify. In fact, he already testified as he recounts the circumstances of the questioning and then the arrest. He's going to testify that she told me that she was an alien. Yes, Your Honor. But, of course, he didn't provide her any warning, anything you say we can use against you. Well, Border Patrol Officer Orodondo, when he first met up with Ms. Mosqueda, he hadn't apprehended her. And we weren't in a criminal situation where he was doing an interrogation where, for instance, a Miranda temporary warning would arise. And is the purpose of the warning in I-213, is that a Miranda warning, that is to say the potentiality for a criminal proceeding, not just an administrative proceeding? I don't know that, Your Honor. I can't answer that question. Because one of the – because your answer says, you know, that warning that precedes the I-213 questioning is really irrelevant. I mean, if he already knows the information, we're going to use it against her. But, Drew, in the civil immigration proceedings, as we know, the exclusionary rule doesn't apply but until we look at the area. After the egregiousness, yeah. And with regard to the suppression, there's been no showing by Ms. Mosqueda's case that this was a criminal proceeding. It's not a session where the immigration judge would hold a separate hearing to determine whether to suppress evidence. No, this is not a criminal proceeding. I understand that. And so it's not a bifurcated process. So in sum, we would suggest that there was no egregious violation because there was no seizure. It was a mere questioning. And the technical violation doesn't necessitate suppression because Ms. Mosqueda presented no prejudice to the court. Okay. Thank you. Mr. Gunn? I'll just read you a – if it's okay with you, I'll read you a portion of 287.3 that dealt with the question you asked government counsel. There's actually four parts to 287.3, but the part that Your Honor was interested in is subpart C, and it says that the examining officer will also advise the alien that any statement made may be used against him or her in a subsequent proceeding. And it's referring to administrative proceedings, a removal proceeding. So that answers that question. Where does it show that that was not done? That may – that – I'm not – it will be on the form I-213. I-213 says subject was furnished in red form I-826, and she verbally stated she understood her rights. Okay. Well, that may have been done. That may have been done? Well, it may have been done, but after she had already given her testimony or after she was interrogated. Well, where does it show that she was not advised of her rights before this question? Well, since Agent Arradondo violated the regulation by doing the interrogation himself, he already had the information of alienage. But where does it show that she was not advised of her rights? It doesn't. It may not, Your Honor. Okay. So – and he says that she was advised of her rights in the I-23. After she had already given – been interrogated, she wasn't. She may very well have been advised of her rights. Also, 287.3 doesn't prevent this person from conducting the examination. It says if no other qualified officer is readily available, and the taking of the alien before another officer would entail delay, the arresting officer, if the conduct of such examination is part of the duties assigned him, may examine the alien. So there are circumstances under which the examination can be conducted by the person who did it here. That's true. But there was testimony that there were two other agents available at the station. At least they were at the station. Of course, they weren't – they may have been attending to other duties, but they were there at the station. Then there's further testimony by Agent Arradondo that, in fact, it was his normal practice to do this, is to say, to conduct his own interrogations for the I-213. That's correct. He pretty much admitted that he disregarded 287.3 routinely, which he did in this case also. I'd just like to make one other comment about the egregiousness of the violation. If what government counsel is saying is true, and that an immigration officer can take a person with absolutely no reasonable suspicion and ask them if they're an alien, I think that that's offensive. I don't think that's what the law is at all, especially not in the Ninth Circuit. Thank you very much. Thank you very much. The case of Mosquero, and I'm having trouble with the pronunciation, Arreajo v. Gonzales is now submitted for decision.
judges: Trott, W. Fletcher, Restani